UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES THOMPSON, LEE FITCH, CHRIS HARRISON, JONATHAN NELSON, WILLIAM PURVIANCE, CHRISTOPHER LOVE, and FERNANDO CHAVEZ, | § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-0758-B |
| INTERNATIONAL PAPER COMPANY, UNITED STEELWORKERS, and UNITED STEELWORKERS LOCAL UNION NO. 895, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The defendants have asked the Court to reconsider its October 19, 2017 order, Doc. 111, denying the defendants' motions for summary judgment. Docs. 113, 115. The Court **DENIES** the defendants' motions.

### I.

### BACKGROUND[1]

The Court recited the facts of this case in detail in its order denying summary judgment and will not do so again here. The short version follows.

The plaintiffs claim International Paper should be paying them for their lunch breaks, and

---

[1] This factual history is drawn from the plaintiffs' First Amended Complaint, the parties' summary-judgment briefing, and the parties' briefing of the pending motions. The Court has noted when facts are in dispute.

- 1 -

the text of the 2010 collective bargaining agreement (CBA) explicitly supports the plaintiffs. The defendants respond that the CBA contains a typo and that neither International Paper nor the plaintiffs' union (the Union) ever intended the CBA to entitle the plaintiffs to paid lunch breaks. Essentially, the defendants are trying to avoid the CBA's text via a mutual-mistake defense. The plaintiffs reply that their employer and union are colluding to avoid having to comply with the text of the CBA.

In denying the defendants' motions for summary judgment, the Court relied in part on statements allegedly made by local union representative Larry Hughes. Two of the plaintiffs claim Hughes told them at a meeting shortly after the Union decided to drop the plaintiffs' grievance that "if [the plainitffs] had been union members things could have gone differently." Doc. 104-1, App'x to Pls.' Consolidated Resp., 4, 7. And a third plaintiff claims Hughes "often made the statement if y'all were in the Union they might help. But since we were not, the union was not really gonna waste time with it." *Id.* at 19.

The Court considered the above affidavits to be important in two ways. The evidence is important for two reasons because the plaintiffs must prove two things to win their case: 1) that their employer breached the collective bargaining agreement and 2) that their union breached its duty of fair representation. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990). As to the first requirement, the Court found that, along with other evidence the plaintiffs presented, the affidavits were some evidence that the defendants did not make a mutual mistake. Doc. 111, Order, 10–11. And as to the second requirement, the Court found the affidavits to be some evidence that the Union breached its duty of fair representation by acting in a bad-faith, discriminatory, or arbitrary manner. *Id.* at 13.

In the Union's motion for reconsideration, the Union challenges the Court's reliance on the above affidavits and chides the Court for failing to consider statements Hughes made in his deposition, which the Union contends show that Hughes always thought the plaintiffs' grievance lacked merit. The Union presented the deposition testimony in a motion to strike part of the plaintiffs' summary-judgment evidence in which the Union alternatively argued that the excerpts from Hughes' deposition should be included in the summary-judgment record under the rule of optional completeness. Doc. 113, Union's Mot. Reconsideration, 13–14. The Court did not resolve the motion to strike because it denied the motion for summary judgment without considering the evidence the Union wanted the Court to strike, so the Court did not consider the deposition excerpts in the Union's motion to strike. Doc. 111, Order, 14 n.5.

In its own motion for reconsideration, International Paper claims the Court erred in denying summary judgment on the defendants' mutual-mistake defense. Doc. 115, International Paper's Mot. Reconsideration, 2. International Paper contends that its "undisputed" evidence prevents a jury from reasonably inferring that the CBA's text entitled the plaintiffs to paid lunch breaks for any reason other than a mutual mistake made by the Union and International Paper. *Id.* International Paper chiefly complains that the Court relied on evidence of conduct that occurred after International Paper and the Union signed the CBA and that evidence of conduct that occurred after the defendants signed the CBA cannot rebut the defendants' direct evidence of what happened at the negotiations that resulted in the CBA. *Id.* at 3.

## II.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not explicitly provide for motions for

reconsideration. Although the defendants contend that the Court should treat their motion as one to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), the applicable rule is actually 54(b), which the Fifth Circuit has said gives trial courts the authority to reverse their interlocutory orders before issuing final judgments, *Niagra Mach. & Tool Works*, 910 F.2d 167, 185 n.92 (5th Cir. 1990). Rule 59(e)[2] applies to judgments, but the Court has issued no judgment. Rather, the Court merely denied the defendants' motions for summary judgment. And an order denying summary judgment is interlocutory, not a judgment. *Id.* at 185. This Court has granted a motion to reconsider an order denying summary judgment because the movant presented in its motion for reconsideration new evidence that the Court believed eliminated the fact issue that led it to deny summary judgment in the first place. *Robinson v. Procter & Gamble Distr. Co.*, No. Civ.A.3:02CV2012, 2004 WL 3019092, at *1 (N.D. Tex. Dec. 30, 2004).

That said, courts should proceed cautiously when reviewing motions for reconsideration when the motion to be reviewed is a denial of summary judgment. The Northern District of Texas's Local Rules dictate that a party may file only one motion for summary judgment unless otherwise directed by the presiding judge. N.D. Tex. Civ. R. 56.2(b). Reviewing denials of motions for summary judgment under too lax of a standard would be akin to allowing multiple motions for summary judgment absent direction by presiding judges.

### III.

### ANALYSIS

The Court has considered the defendants' motions for reconsideration but has not changed

---

[2] Rule 59(e) refers to "motion[s] to alter or amend a judgment." Fed. R. Civ. P. 59(e).

its mind. Unlike the defendants in *Robinson*, neither defendant here contends that summary judgment should be granted based on new evidence. Rather, they complain that the Court misapplied the summary-judgment standard. The defendants rehash arguments they have already made and make arguments they could have made in their motions for summary judgment. Courts should be hesitant to grant motions for reconsideration in such cases because parties should not often have more than one bite at the summary-judgment apple. N.D. Civ. R. 56.2(b). Nonetheless, the Court will respond to each defendant's arguments in turn.

A.  *The Union's Motion*

The Union first contends that the affidavits in which certain plaintiffs allege that Hughes made statements indicating that the Union may have dropped the plaintiffs' grievance because some of the plaintiffs were not union members do not create a fact issue as to whether the CBA's text entitled the plaintiffs to paid lunches because of a typo. Doc. 113, Union's Mot. Reconsideration, 5.

The Union is still incorrect. As in its summary-judgment motion, the Union harps on the fact that national union representative John Dykes, not Hughes, had the final say on whether to pursue the plaintiffs' grievance. *Id.* at 6. But the fact that Dykes had the final say does not make the alleged statements by Hughes immaterial or irrelevant. A jury could reasonably infer that Hughes' alleged statements reflect the Union's or Dykes's views. Indeed, in the alleged statements Hughes explained the Union's actions rather than his own. Doc. 104-1, App'x to Pls.' Consolidated Resp., 4, 7. Even though Dykes claims not to have considered the plaintiffs' membership status, Doc. 98-1, App'x to Union's Mot. Summ. J., 10, the plaintiffs' evidence of Hughes' statements conflicts with Dykes's statement. A jury must decide who to believe.

But the Union claims—for the first time—that the alleged Hughes statements are "stray

remarks" insufficient to create a fact issue. Doc. 113, Union's Mot. Recon., 9 (citing *Spears v. Patterson UTI Drilling Co.*, 337 App'x 416, 420 (5th Cir. 2009)). The Union is incorrect. In *Spears*, the Fifth Circuit refused to consider statements that were "vague and remote in time." *Id.* at 420. Spears, an African-American, claimed his employer fired him because of his race. *Id.* at 418. The person that fired Spears said "he no longer disliked African-Americans, just Whites." *Id.* at 420. The plaintiff said this statement was direct evidence of racial animus towards African-Americans. *Id.* The Fifth Circuit thought the statement was too vague to consider because, though it might have shown that the speaker harbored animosity against African-Americans at some time, it did not actually show that the speaker harbored animosity at the relevant time. *Id.* at 421.

Here, two of the affidavits accusing Hughes of making discriminatory statements are neither vague nor remote in time. According to the two affidavits, Hughes allegedly made the statement at a meeting at which Hughes informed the plaintiffs that the Union would not pursue their grievance. Doc. 104-1, App'x to Pls.' Consolidated Resp., 4, 7. And the affiants allege that Hughes said at that meeting that "if [the plaintiffs] had been union members things could have gone differently." *Id.*

As the Union argues, one could infer that the "things" Hughes allegedly said "could have gone differently" could have been "things" other than the Union's decision to abandon the plaintiffs' grievance. One could infer this even though Hughes allegedly made the statement at a meeting at which he was informing the plaintiffs that the Union was no longer pursuing their grievance. And as the Union contends, one might wonder why the Union would drop the plaintiffs' grievance based on lack of union membership even though some of the plaintiffs were union members and the dispute over paid lunch breaks equally affected union and non-union members. Nonetheless, given what the plaintiffs say Hughes said and the setting in which they say he said it, one could also reasonably infer

that Hughes was referring to the Union's decision to abandon the plaintiffs' grievance. And the Court must make all reasonable inferences in favor of the non-movants. *Am. Tel. & Tel. Co. v. Delta Comms. Corp.*, 590 F.2d 100, 101–02 (5th Cir. 1979). Thus, the two affidavits are some evidence that the Union abandoned the grievance for reasons other than that the CBA contained a typo.

The defendants also attack the plaintiffs' third affidavit, in which Plaintiff Chris Love attests that Hughes "often made the statement if y'all were in the Union they might help. But since we're not, the union was not really gonna waste time with it." Doc. 104-1, App'x to Pls.' Consolidated Resp., 19. From the affidavit, the Court cannot tell when Hughes made the alleged statements or to what he was referring. Unlike the other two affidavits mentioned here, the Love affidavit does not indicate that Hughes made his statements at a meeting regarding the plaintiffs' grievance. But Love's affidavit is not the only evidence. Even if the Love affidavit were not enough to preclude summary judgment standing alone, it, the other two affidavits, and the other evidence the Court discussed, preclude summary judgment when taken together.

Nor, as the Union suggests, has the Court presumed facts in the plaintiffs' favor. The Union says the Court assumed without any evidence that Dykes wanted to discriminate against non-union members. Doc. 13, Union's Mot. Reconsideration, 9. Again: wrong. The Court did not at the summary-judgment stage weigh the evidence to determine why the Union dropped the grievance. The Court merely found that the plaintiffs presented some evidence that the Union did not abandon the grievance because of a typo and therefore declined to issue judgment based on the defendants' mutual-mistake defense without a trial.

In arguing that the Court wrongfully presumed facts in the plaintiffs' favor, the Union erroneously relies on two cases. First, the Union cites *Salazar-Limon v. Houston*, in which the plaintiff

contended that an officer that shot him used excessive force. 826 F.3d 272, 274 (5th Cir. 2016). The district court granted summary judgment on the officer's qualified-immunity defense. *Id.* The officer testified that the plaintiff reached for his waistband. *Id.* at 275. Salazar-Limon never disputed that he reached for his waistband or presented evidence that he did not reach for his waistband. *Id.* at 278–79. On appeal, the plaintiff contended that the officer's testimony was insufficient to establish that he reached for his waistband even though he did not deny that fact or present evidence to the contrary. *Id.* at 278. The Fifth Circuit affirmed the district court because Salazar-Limon failed to present any evidence controverting the officer's testimony. *Id.* at 278–79.

*Salazar-Limon* clearly differs from this case. There, the plaintiff presented no evidence of his own that he did not reach for his waistband. *Id.* at 278–79. Here, though, the plaintiffs have presented some evidence supporting their claim. Although Dykes says he did not consider whether the plaintiffs were union members when he decided to drop their grievance, for the reasons discussed above, the plaintiffs' evidence of Hughes' alleged statements contradicts Dykes's statement, creating a fact issue for the jury.

The Union relies also on *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238 (7th Cir. 1997)—again, in error. The facts of *Crider* are similar to those in this case in that the issue in *Crider* was whether a union breached its duty of fair representation by declining to pursue a grievance. *Id.* at 1240. Crider claimed his union dropped his grievance because his union disfavored him. *Id.* at 1243. He asserted that his union disfavored him because he had thrice run for local-union president and narrowly lost, and he claimed that the union official who decided to drop his grievance "did not like him and had never done anything for him." *Id.* at 1243–44. But Crider never pointed to any specific conduct indicating that union officials disfavored him, and he did not connect alleged

disfavor by local union officials to the official that dropped his grievance. *Id.* at 1244.

This case differs from *Crider* for two reasons. First, unlike in *Crider*, the plaintiffs have presented some evidence that the Union may have disfavored them. Whereas Crider presented no evidence of conduct indicating that union officials disfavored him, the plaintiffs in this case have presented evidence that Hughes, a union official, told them at a meeting about their grievance that "if [the plaintiffs] had been union members things could have gone differently." Doc. 104-1, App'x to Pls.' Consolidated Resp., 4, 7. And second, the Seventh Circuit concluded that animus of local union officials toward Crider would have been irrelevant given that a national union official had the authority to pursue or abandon Crider's grievance. *Crider*, 130 F.3d at 1244. The Union hopes *Crider* has some bearing on this case because, like in *Crider*, Hughes was a local union official and Dykes, who decided not to pursue the plaintiffs' grievance, was a national union official. Doc. 113, Union's Mot. Reconsideration, 11. The Union's hope is misplaced. Given the setting in which the plaintiffs claim Hughes made the statements, one could reasonably take the statements to explain the Union's actions rather than Hughes'. Doc. 104-1, App'x to Pls.' Consolidated Resp., 4, 7.

Next, aside from attempting to discount the weight of the plaintiffs' evidence, the Union accuses the Court of ignoring evidence. Doc. 113, Union's Mot. Reconsideration, 13. The evidence the Union said the Court ignored consists of statements made by Hughes indicating that Hughes believed the plaintiffs' grievance lacked merit when he first received the grievance. *Id.* at 14. But, although the Court did not consider the deposition testimony from the Union's motion to strike, the Court did take into account that Hughes claimed to have believed from the beginning that the grievance lacked merit. Doc. 111, Mem. Op. & Order, 3, 8. Thus, the Union's argument that the Court ignored evidence fails.

The Union also accuses the Court of applying the wrong legal standard in the part of its order discussing the Union's duty of fair representation. Doc. 113, Union's Mot. Recon., 17. But the Union does not say which rule of law cited by the Court was incorrect, and the Court applied the rule the Union cites in its motion. *Compare* Doc. 113, Union's Mot. Recon., 17 *with* Doc. 111, Mem. Op. & Order, 12. The Union cites also the rule that a union has no duty to take a baseless grievance to arbitration if the union makes a good-faith determination that the grievance is baseless. Doc. 118. Union's Reply, 8 (citing *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 658 (4th Cir. 2002)). The Court's order denying summary judgment does not conflict with this rule, nor does it impose a duty on unions to pursue meritless grievances. The issue here is whether the Union acted in good faith. And despite what the Union says, the plaintiffs have presented some evidence of bad faith.

*B. International Paper's Motion*

International Paper makes no new arguments in its motion for reconsideration but contends again that the evidence the plaintiffs presented does not create a fact issue on the defendants' mutual-mistake defense. Doc. 115, International Paper's Mot. Reconsideration, 5. Rather, International Paper says that even considering the plaintiffs' evidence, the defendants have conclusively established mutual mistake. *Id.* at 6. International Paper harps on the fact that the evidence it has presented is of what actually happened at the negotiations that resulted in the CBA and says the plaintiffs cannot survive summary judgment because they have no direct evidence of what happened at the negotiations. *Id.*

But the plaintiffs do not have to provide direct evidence of what happened at the negotiations to survive summary judgment. For the reasons the Court has already stated, the evidence the plaintiffs have presented, when taken together, is some evidence contradicting the defendants'

account. Thus, a fact issue remains on the defendants' mutual-mistake defense.

## IV.

## CONCLUSION

The Court **DENIES** the defendants' motions for reconsideration.

**SO ORDERED.**

**SIGNED: December 13, 2017.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE